The STATE of Ohio, Appellee,

v.

KATES, Appellant.

[Cite as State v. Kates, 169 Ohio App.3d 766, 2006-Ohio-6779.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–421.

Decided Dec. 21, 2006.

Richard C. Pfeiffer Jr., Columbus City Attorney, Stephen L. McIntosh, Chief Prosecuting Attorney, and Tannisha D. Bell, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and John W. Keeling, Staff Attorney, for appellant.

BRYANT, Judge.

{¶ 1} Defendant-appellant, Tracy A. Kates, appeals from a judgment of the Franklin County Municipal Court finding him guilty of one count of obstructing official business and one count of resisting arrest. Because the trial court did not abuse its discretion in amending the complaint for resisting arrest, and because sufficient evidence and the manifest weight of the evidence support the defendant's convictions, we affirm.

{¶ 2} By complaints filed January 24, 2005, the defendant was charged with one count of obstructing official business in violation of R.C. 2921.31(A) and one count of resisting arrest in violation of R.C. 2921.33(A), both second-degree misdemeanors. Although the record contains no charging document, the parties agree that defendant was also charged with operating a vehicle while intoxicated ("OVI").

{¶ 3} At the defendant's jury trial, the city presented evidence that Beatrice McAllister was driving her car northbound on Cleveland Avenue at approximately 6:17 p.m. on January 20, 2005. As she attempted a turn onto Huy Road, the defendant, who was traveling southbound on Cleveland Avenue, struck her vehicle. The defendant, Beatrice, and her passenger, Yero McAllister, exited their respective vehicles to assess the damage; the defendant's passenger, Meshell Blair, remained in the car. Yero told the defendant that he was going to report the accident to the police. The defendant then started walking toward a nearby gas station. Yero remarked to Beatrice that he thought that the

defendant had been drinking. At about the same time, Beatrice observed Blair relocate from the passenger seat to the driver's seat of defendant's car.

{¶ 4} When Clinton Township Police Officer Terry Phillips arrived at the scene, Beatrice and Yero identified the defendant as the driver of the vehicle that struck them, and they advised Officer Phillips that the defendant was drunk and was walking toward the gas station. Officer Phillips followed the defendant, identified himself as a police officer, and ordered the defendant to stop. Because the defendant did not comply with the order, Officer Phillips assumed that the defendant did not hear him. He repeated the order to stop, again identifying himself as a police officer; the defendant turned around, looked at Officer Phillips, and started walking faster toward the gas station. Officer Phillips again ordered the defendant to stop. The defendant again did not heed the order and entered the gas station.

{¶ 5} Officer Phillips followed the defendant into the gas station and asked him why he was running away from him; the defendant looked as if he did not understand the question. Officer Phillips noted that the defendant smelled strongly of alcohol and seemed "nervous and apprehensive." Officer Phillips decided to arrest the defendant for obstructing official business because the defendant "tried to walk away from me and didn't stop * * * [as] I was trying to investigate a traffic accident in which he had been identified as a driver." He informed the defendant that he was under arrest for obstruction of official business and instructed him to put his hands behind his back; the defendant responded to the effect of "why" or "no" or "it wasn't me" or "I wasn't driving." Officer Phillips again informed the defendant he was under arrest, grabbed his arm, and put it behind his back. The defendant attempted to pull away. Afraid that the defendant would run out of the gas station, Officer Phillips pushed him into a food display and handcuffed him.

{¶ 6} As Officer Phillips escorted the defendant out of the gas station toward the police cruiser, the defendant became angry, violent, and verbally abusive and attempted to extricate himself from Officer Phillips's grasp. The defendant further resisted Officer Phillips's efforts to place him in the cruiser. With the aid of another police officer, Officer Phillips was able to secure the defendant in the cruiser.

{¶ 7} Given his suspicion that the defendant was intoxicated, Officer Phillips requested that the defendant perform field sobriety tests and submit to a breathalyzer. The defendant refused, saying that he was not driving the vehicle involved in the accident. Officer Phillips charged defendant with OVI, obstructing official business, and resisting arrest.

{¶ 8} Blair, the defendant's live-in girlfriend of 15 years and the mother of his two children, testified on the defendant's behalf. Blair averred that she, not the

defendant, drove the car involved in the accident. According to Blair, after she and Beatrice exchanged insurance information, the defendant had started walking to the gas station to find a telephone. When Officer Phillips arrived, Blair reported that she was driving the car, but Beatrice interjected that the defendant was the driver, that he had been drinking, and that he was now walking away from the scene. Blair corroborated Officer Phillips's testimony that the defendant continued walking toward the gas station despite the officer's repeated orders to stop.

{¶ 9} Based on that evidence, the jury found the defendant guilty of obstructing official business and resisting arrest. Although the transcript indicates that the jury also found defendant not guilty of OVI, the record contains neither a jury verdict nor a judgment entry to that effect. The trial court imposed a sentence of 90 days on each of the charges on which the defendant was convicted, credited the defendant with 37 days for pretrial confinement on each charge, and suspended the remaining 53 days on each charge on condition of two years of probation. The court ordered the sentences to be served consecutively upon revocation of probation. The court further imposed a $50 fine plus court costs on each charge.

{¶ 10} The defendant timely appeals, assigning three errors:

Assignment of Error Number One

The trial court erred when it granted the state's motion to amend the complaint of resisting arrest, over the objection of the defendant, to state other essential facts when the motion was made at the close of all of the evidence in order to avoid an acquittal under Crim.R. 29 when such an amendment to the complaint deprived the defendant of his right to a trial on the newly alleged facts.

Assignment of Error Number Two

The trial court erred when it entered a judgment of conviction against the defendant on the charge of obstructing official business when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence presented when the prosecution failed to prove that the defendant did not have a privilege to go on about his lawful business or that he acted with the purpose to obstruct the officer in the performance of his lawful duties.

Assignment of Error Number Three

The trial court erred when it entered a judgment of conviction against the defendant on the charge of resisting arrest when the evidence was insufficient to sustain the conviction and the conviction was against the manifest weight of the evidence presented when the prosecution failed to prove that the arrest was lawful and supported by probable cause, that proper notice had been given of

the cause for the arrest, and that the defendant understood that he was under arrest.

## I. First Assignment of Error

{¶ 11} By the first assignment of error, the defendant contends that the trial court erred in allowing the city to amend the complaint for resisting arrest. The original complaint charged that the defendant "did: recklessly or by force, resist or interfere with a lawful arrest of himself to wit: while handcuffed and placed under arrest after a traffic crash, did actively try to get away from officers and push away officer, physically hindering his arrest." Following the close of the evidence, the defendant renewed his Crim.R. 29 motion for acquittal, asserting that the city's evidence was insufficient to sustain a conviction on the charge of resisting arrest. In considering the motion, the trial court observed that the trial testimony on that charge had principally addressed the defendant's resistance to being placed in the police cruiser, which occurred after the defendant was arrested for obstructing official business. The city responded by noting Officer Phillips's testimony that the defendant had resisted, and a struggle had ensued, when Officer Phillips informed the defendant inside the gas station that he was under arrest for obstructing official business.

{¶ 12} The trial court then inquired whether the city wished to amend the complaint. The city responded affirmatively, citing Crim.R. 7(D) and requesting time to review the transcript of Officer Phillips's testimony about what transpired inside the gas station at the time of the arrest. The court denied the request, and the city orally moved to amend the complaint to state: "did recklessly or by force resist or interfere with a lawful arrest of himself * * * [T]o wit, while inside the Sunoco station, the defendant struggled with Officer Phillips as Officer Phillips attempted to arrest him, thereby physically hindering his arrest." The court approved the amendment over the defendant's objection. The trial court later filed an entry journalizing the amendment.

{¶ 13} As relevant here, Crim.R. 7(D) provides, "The court may at any time before, during, or after trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." A trial court's decision to permit an amendment that changes the name or identity of the charged offense constitutes reversible error regardless of whether the accused can demonstrate prejudice. *State v. Martin,* Franklin App. No. 05AP–818, 2006-Ohio-2749, 2006 WL 1495079, at ¶ 8, citing *State v. Honeycutt,* Montgomery App. No. 19004, 2002-Ohio-3490, 2002 WL 1438648. In contrast, an amendment that does not change the name or identity of the crime charged is reviewed under an abuse-of-discretion standard. *Martin,*

2006-Ohio-2749, 2006 WL 1495079, citing *State v. Kittle,* Athens App. No. 04CA41, 2005-Ohio-3198, 2005 WL 1491997, at ¶ 13. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 14} The amendment in this case clarified that the charge of resisting arrest arose out of the defendant's actions inside the gas station at the time he was informed of his arrest for obstructing official business, rather than out of his subsequent actions in resisting police efforts to place him in the police cruiser. Because the amendment changed neither the name nor the identity of the charged offense, we must determine whether the trial court abused its discretion in permitting the amendment. *Martin,* 2006-Ohio-2749, 2006 WL 1495079, ¶ 18, supra, citing *Kittle,* 2005-Ohio-3198, 2005 WL 1491997, ¶ 13.

{¶ 15} When, as here, an amendment is made to the substance of the complaint, "the defendant is entitled to a discharge of the jury on the defendant's motion, * * * and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance * * *." Crim.R. 7(D); *State v. Gondek* (Jan. 26, 2000), Medina App. No. 2928–M, 2000 WL 109044. Although the defendant objected to the amendment, he did not move for a discharge of the jury or for a continuance. Accordingly, the defendant waived any error when the trial court did not discharge the jury or continue the case. *Martin,* 2006-Ohio-2749, 2006 WL 1495079, at ¶ 10 (concluding that the defendant waived any alleged error relating to the trial court's failure to discharge the jury or to grant a continuance when the defendant objected but did not request a discharge of the jury or a continuance but, instead, chose to proceed with the trial); see, also, *Gondek,* Medina App. No. 2928–M, 2000 WL 109044 (stating that the defendant waived objection to an amendment of the indictment to correct the culpable mental state from "knowingly" to "recklessly" when defendant objected to the amendment but did not move for a discharge of the jury and declined the court's invitation to move for a continuance); *State v. Newton* (Feb. 4, 1981), Hamilton App. No. C–800055 (concluding that the trial court's alleged error in allowing amendment of an indictment to change time period of offense was not preserved for appeal when the defendant objected to amendment on grounds that he had just been made aware of amendment, but did not request a continuance).

{¶ 16} Moreover, the defendant was not misled or prejudiced by the amendment. Although the defendant complains that the timing of the amendment was "patently unfair," Crim.R. 7(D) permits amendment "at any time before, during, or after a trial." Further, contrary to the defendant's assertion,

the original complaint did not specifically allege that the resisting occurred "*after* the defendant had been handcuffed and placed under arrest." (Emphasis added.) Rather, the original complaint charged that the defendant "*while* handcuffed and placed under arrest after a traffic crash, did actively try to get away from officers and push away officer, physically hindering his arrest." (Emphasis added.) The complaint reasonably could be read to aver that the defendant, "while (being) handcuffed and placed under arrest after a traffic crash, did actively try to get away from officers and push away officer, physically hindering his arrest."

{¶ 17} Moreover, our review of the record belies the defendant's assertion that he was prejudiced in that he was unaware that he would be required to defend against charges of resisting arrest stemming from his conduct inside the gas station at the time of his arrest. In its opening statement, the city noted that Officer Phillips would testify that upon instructing the defendant inside the gas station to put his hands behind his back, the defendant was belligerent and uncooperative and struggled with him. In addition, Officer Phillips testified in detail about his encounter with the defendant inside the gas station, including the defendant's efforts to resist arrest, and the defendant was provided the opportunity to thoroughly cross-examine on the issue.

{¶ 18} Indeed, the defendant's trial strategy appeared to be that because Officer Phillips did not sufficiently inform the defendant that he was under arrest, the defendant did not understand that the was being arrested and could not have resisted arrest. The defendant maintained the same strategy in closing argument. As a result, the defendant objected to the amendment solely on grounds that it was "too broad and vague." Coupling the defendant's trial strategy with the vagueness of his objection and his failure to move to discharge the jury or to continue the case, we conclude that the defendant failed to demonstrate either that the trial court abused its discretion in amending the complaint or that the amendment prejudiced his defense. Accordingly, the first assignment of error is overruled.

## II. Second and Third Assignments of Error

{¶ 19} The defendant's second and third assignments of error challenge the sufficiency and manifest weight of the evidence supporting his convictions. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, citing *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In this inquiry, a reviewing court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook,

J., concurring.) After viewing the evidence in a light most favorable to the prosecution, the court thus must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 20} Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. In a manifest-weight challenge, the reviewing court sits as a "thirteenth juror and makes an independent review of the record." Id. In performing this function, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 21} The defendant was convicted of obstructing official business in violation of R.C. 2921.31(A), which provides, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A) thus includes five essential elements: (1) an act by the defendant, (2) done with the purpose to prevent, obstruct, or delay a public official, (3) that actually hampers or impedes a public official, (4) while the official is acting in the performance of a lawful duty, and (5) the defendant so acts without privilege. *State v. Dice*, Marion App. No. 9-04-41, 2005-Ohio-2505, 2005 WL 1205336, at ¶ 19; *State v. Brickner-Latham*, Seneca App. No. 13-05-26, 2006-Ohio-609, 2006 WL 319183, at ¶ 25.

{¶ 22} The complaint charged that the defendant obstructed official business because he, "[w]hile leaving the scene of a traffic crash refused several orders of officials to stop, and once apprehended refused to be handcuffed[.]" According to Officer Phillips's testimony, the defendant was not charged with obstructing official business because he resisted efforts to handcuff him. Rather, Officer Phillips testified, he decided to arrest the defendant before the handcuffing because, during an investigation in which the defendant was identified as one of the drivers involved in a traffic accident, the defendant had walked away from Officer Phillips, ignoring his command to stop.

{¶ 23} In response, the defendant contends that Officer Phillips's command to stop was not an authorized act within his official capacity because Officer Phillips did not have probable cause to arrest the defendant for any offense. The defendant contends that Officer Phillips's authority was limited to an investigatory stop under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and that mere flight from a *Terry* stop does not constitute the offense of obstructing official business.

{¶ 24} This precise issue was before this court in *State v. Harris,* Franklin App. No. 05AP–27, 2005-Ohio-4553, 2005 WL 2087926, in which we held that "fleeing from a police officer who is lawfully attempting to detain the suspect under the authority of *Terry,* is an affirmative act that hinders or impedes the officer in performance of the officer's duties as a public official and is a violation of R.C. 2921.31, obstructing official business." Id. at ¶ 16. See, also, *In re Mason* (May 21, 1991), Franklin App. No. 90AP–217, 1991 WL 96322 (recognizing that fleeing from an attempted investigatory stop, while not constituting the crime of resisting arrest, may constitute obstructing official business in violation of R.C. 2921.31(A)).

{¶ 25} Because an officer's attempt to detain a suspect under the authority of *Terry* may be a predicate to the offense of obstructing official business, the issue devolves to whether the defendant's actions constitute a violation of R.C. 2921.31. Other courts have found a violation on similar facts. See *Dice,* 2005-Ohio-2505, 2005 WL 1205336, at ¶ 23 (stating that "it is evident that by running from the police [after being told to stop], Dice did hinder the officers' performance of their lawful duty and that Dice was not privileged to do so"); *State v. Davis* (2000), 140 Ohio App.3d 751, 753, 749 N.E.2d 322 (noting "the evidence shows that Davis became aware that the officers were trying to detain him and continued to walk away from them," giving "the officers probable cause to believe that he was impeding the performance of their duty in violation of R.C. 2921.31"); *Brickner–Latham,* 2006-Ohio-609, 2006 WL 319183, at ¶ 28 (stating "Brickner–Latham's walking away from Officer O'Connor was an affirmative act that hindered or impeded Officer O'Connor in the performance of his official duties," and "Brickner–Latham's persistence in disregarding Officer O'Connor's requests to stop was sufficient evidence for a rational trier of fact to conclude that Brickner–Latham acted with the specific intent to prevent, obstruct, or delay Officer O'Connor's lawful duties"); *State v. Hasley,* Mahoning App. No. 03 MA 215, 2004-Ohio-7065, 2004 WL 2980377, at ¶ 62 (observing, "Hasley took off running after Officer Cox yelled for him to stop," making it "clear from the record that Hasley's apparent attempt to elude Officer Cox and Reese delayed the completion of their lawful duties"); *State v. Lohaus,* Hamilton App. No. C–020444, 2003-Ohio-777, 2003 WL 366755, at ¶ 12 (holding "that Lohaus's actions in fleeing across several lawns

after being told to stop—and in forcing the investigating officer to physically restrain him—fell squarely within [R.C. 2921.31's] proscriptions"); *State v. Botos*, Butler App. No. CA2004–06–145, 2005-Ohio-3504, 2005 WL 1606416, at ¶ 16 (concluding that "[a] reasonable jury could have found that appellant, without privilege, purposefully tried to hinder, obstruct, or delay the police from investigating why he was concealing himself behind the maroon vehicle by running and failing to stop after being ordered to").

{¶ 26} The defendant wrongly relies upon *State v. Gillenwater* (Apr. 2, 1998), Highland App. No. 97 CA 0935, 1998 WL 150354, for the proposition that flight from a *Terry* stop does not constitute obstructing official business. This court, like others, has rejected the reasoning set forth in that case. *Harris*, 2005-Ohio-4553, 2005 WL 2087926, at ¶ 15 (stating, "[W]e decline to follow the reasoning of the Fourth District Court of Appeals in *Gillenwater* "). See, also, *Lohaus*, 2003-Ohio-777, 2003 WL 366755, at ¶ 11 (stating, "We do not find *Gillenwater* to be compelling authority").

{¶ 27} Here, in conducting his investigation into the accident, Officer Phillips followed the defendant from the accident scene because of eyewitness assertions that the defendant was the driver of one of the vehicles. Officer Phillips repeatedly ordered him to stop. The defendant was aware that Officer Phillips was trying to detain him and continued to walk away from him. The defendant's act in failing to heed Officer Phillips's orders to stop was an affirmative act that hindered or impeded Officer Phillips in the performance of his official duties in investigating the accident and was sufficient to support the trial court's judgment of conviction for obstructing official business.

{¶ 28} Moreover, because none of the material facts supporting this judgment were contradicted, we are unable to find that such a conclusion was against the manifest weight of the evidence. See *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541 (in reversing on manifest weight, a court of appeals "disagrees with the factfinder's resolution of the *conflicting testimony* "). (Emphasis added.)

{¶ 29} The defendant also challenges his conviction for resisting arrest on the grounds that sufficient evidence and the manifest weight of the evidence do not support the conviction.

{¶ 30} Resisting arrest is proscribed by R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." The defendant appears to concede that if the arrest for the predicate offense of obstructing official business was a "lawful arrest," then both sufficient and credible evidence supports his conviction for resisting arrest. Because this court finds that sufficient and credible evidence sustains the defendant's conviction for obstructing official business, we likewise find that both

sufficient and credible evidence supports his conviction for resisting arrest.  See *State v. Grooms,* Franklin App. No. 03AP–1244, 2005-Ohio-706, 2005 WL 407573, at ¶ 22.   The defendant's second and third assignments of error are overruled.

{¶ 31} Having overruled the defendant's three assignments of error, we affirm the judgment of the Franklin County Municipal Court.

Judgment affirmed.

KLATT, P.J., and TRAVIS, J., concur.